UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KERRY L. WILSON | CIVIL ACTION |
| VERSUS | NO: 19-14741 |
| EVONIK CORPORATION, et al. | SECTION: T (5) |

## ORDER

Before the Court is a Motion to Dismiss for Failure to State a Claim filed by Evonik Corporation[1] and Roehm America, LLC ("Defendants").[2] Plaintiff Kerry L. Wilson filed an opposition.[3] With leave of Court, Defendants filed a reply in support of their motion.[4] For the reasons set forth below, Defendants Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

### FACTS AND PROCEDURAL BACKGROUND

Plaintiff has brought claims against his former employer under Title VII of the Civil Rights Act of 1964. According to his Complaint,[5] Plaintiff is an African American male who commenced working for Defendant Evonik Corporation, now Roehm America, LLC, in 2009 at their plant in Waggaman, Louisiana, as a process operator.[6] He claims that, shortly after starting his position, he was falsely accused of stealing company time by his then supervisor and suspended, without

---

[1] This party was incorrectly named, and should be identified as Evonik Cyro, LLC.
[2] R. Doc. 8.
[3] R. Doc. 13.
[4] R. Doc. 27.
[5] R. Doc. 1.
[6] R. Doc. 1, pp. 1-3.

1

evidence, for seven days.[7] Other incidents were alleged as follows:

On or about October 6, 2017, Plaintiff claims he was verbally and physically assaulted by the Operations Manager and subsequently physically assaulted by the Assistant Plant Manager and a colleague, Wade Guilbeau. He asserts he was chastised by both men for failing to "refuse overtime in a timely manner." Plaintiff asserts that, when he attempted to rebuff their accusations and remove himself from the situation, Mr. Guilbeau verbally threatened him with physical violence and attempted to block his retreat by grabbing his arm. Plaintiffs asserts the entire shift team was present during the exchange. Mr. Guilbeau, Plaintiff asserts, was not disciplined.

Two days later, on October 8, 2017, when Plaintiff was taken aside by an assistant plant manager, Dave Terrace, and asked how he would like to his threats made against Mr. Guilbeau, Plaintiff felt threatened by Mr. Terrace's implication and version of events. On October 10-11, 2017, Plaintiff states he took two days of leave under the Family Medical Leave Act and was later written up for missing two days of work. On October 19, 2017, Plaintiff states he received a write-up for being tardy due to a fallen tree on the road to the plant, but white coworkers who were late did not receive write-ups or infractions. After a week of harassment, Plaintiff states he took six weeks of short-term disability leave because he was afraid to return to the hostile work environment. On or about November 21, 2019, Plaintiff learned of a supervisor tampering with paperwork to cover over a coworker's tardiness. On August 16, 2018, Plaintiff states he was openly mocked in a team meeting by Michael Renner when he posited a question about which shift was to do clean up of the plant. Plaintiff claims Mr. Renner imitated and belittled Plaintiff in front of

---

[7] R. Doc. 1, p. 3.

2

his coworkers. Finally, on August 2, 2018, and August 16, 2018, Plaintiff states he reported the harassment to Dave Terrace, the plant manager, Michael Rimmer, and Robert Harris, Head of Human Resources, and Drew Scott, but no action was taken by Defendants to stop the harassment. Plaintiff claims he was constructively discharged on October 11, 2018.

Plaintiff contends in his Complaint that he was harassed, subjected to a hostile work environment, and discriminated against based on his race. He contends he was disciplined for infractions that white coworkers were not.[8] He specifically alleges that a white coworker, Danny Glover, had engaged in similar behavior as Plaintiff, but was not subjected to similar treatment. Plaintiff asserts he was subjected to retaliatory behavior by Defendants, and that he was constructively discharged from employment for reporting the discriminatory practices on August 2 and 8, 2018. He contends he was a (1) member of a protected class; (2) that he received disparaging and harassing treatment, and insulting and physical conduct toward him; (3) that the harassment was sufficiently severe, persistent, and pervasive, and affected a term of condition of his employment; (4) that the harassment had the purpose or effect of unreasonably interfering with Plaintiff's work performance; and (5) that the harassment had the purpose or effect of creating a dangerous, hostile, and offensive work environment.[9] Plaintiff contends he took advantage of al preventive and corrective opportunities provided by Defendant, but that the discrimination caused him to suffer a hostile work environment, ultimately resulting in his constructive discharge.[10]

Plaintiff seeks damages as a result of an unlawful employment practice and a violation of

---

[8] R. Doc. 1, p. 5.
[9] R. Doc. 1, p. 6.
[10] R. Doc. 1, p. 6.

Title VII of the Civil Rights Act of 1964. He seeks damages in the amount of $2,500,000.[11]

Defendants have filed a Motion to Dismiss, asserting several bases for dismissal of Plaintiff's claims with prejudice.[12] Defendants assert that Plaintiff filed in October 2018 a complaint asserting the same claims as he does in his present complaint. Thus, Defendants assert that the present complaint is barred by the doctrines of res judicata and collateral estoppel, and like the first complaint, is also subject to dismissal for failure to state any claims upon which relief could be granted.[13] Defendants maintain that the first complaint was dismissed with prejudice by this Court, and that it constitutes a final judgment among the parties. Plaintiff has responded, asserting that his petition did not include acts or conduct from March 2018 to October 2018, and thus they were the subject of a second complaint with the Equal Employment Opportunity Commission ("EEOC").[14]

## LAW AND ANALYSIS

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[15] Motions to dismiss for failure to state a claim are viewed with disfavor and are rarely granted.[16] To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

---

[11] R. Doc. 1, p. 7.
[12] R. Doc.
[13] R. Doc. 8-1, p. 1.
[14] R. Doc.
[15] Fed. R. Civ. P. 12(b)(6).
[16] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

is plausible on its face.'"[17] In evaluating a complaint under Rule 12(b)(6), the district court should confine itself to the pleadings,[18] and the documents attached to the complaint.[19] Therefore, the Court determines that Plaintiff is not entitled to judgment as a matter of law.

A complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[20] The complaint is construed in the light most favorable to plaintiff, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in plaintiff's favor.[21] On the other hand, courts may not rely on "legal conclusions that are disguised as factual allegations."[22] If factual allegations are insufficient to raise a right to relief above the speculative level, the claim should be dismissed.[23]

This Court will initially dispense with Defendants' efforts to seek dismissal of the claim in a 12(b)(6) motion under the doctrines of res judicata and collateral estoppel, which are affirmative defenses. "[M]otions to dismiss are viewed with disfavor and are rarely granted," and "generally a res judicata contention cannot be brought in a motion to dismiss; it must be pleaded as an affirmative defense."[24] Here, Defendants have not pleaded the affirmative defenses either in an

---

[17] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).
[18] *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004).
[19] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).
[20] *Iqbal*, 556 U.S. at 678.
[21] *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004) (*citing Herrmann Holdings Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 558 (5th Cir. 2002)).
[22] *Jeanmarie v. United States*, 242 F.3d 600, 603 (5th Cir. 2001) (*citing Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)).
[23] *Twombly*, 550 U.S. at 555.
[24] *Hall v. Hodgkins*, 305 F.App'x 224, 227-28 (5th Cir. 2008) (quoting *Test Masters Educ. Servs.,*


answer or motion for summary judgment, and this Court will not address those defenses in a 12(b)(6) motion to dismiss.

In his Complaint,[25] Plaintiff asserts the following claims: (1) hostile work environment in violation of Title VII; (2) race discrimination in violation of Title VII; and (3) retaliation in violation of Title VII, including his resignation because of a "constructive discharge." Defendants contend that Plaintiff has failed to allege any facts which meet the pleading threshold of Twombly and Iqbal, that Defendants took any action against him that might possibly create a right to relief. Defendants characterize the Complaint as containing "merely a handful of discrete grievances regarding his former workplace, none of which sufficiently demonstrate discrimination towards Plaintiff based on his race."[26] Plaintiff in his response has not addressed Defendants' arguments.[27]

To maintain a cause of action for hostile work environment under Title VII, a plaintiff must generally allege that he (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[28] Race-based harassment affects a term, condition, or privilege of employment when it is "sufficiently severe or

---

*Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005)). Although Defendants cite *Hall* as support for the practice of asserting affirmative defenses in a 12(b)(6) motion to dismiss, in that case, the pro se appellant had waived his challenge by failing to raise the issue on appeal. The Fifth Circuit emphasized that a 12(b)(6) is not the proper vehicle to assert an affirmative defense of res judicata.
[25] R. Doc. 1.
[26] R. Doc. 8-1, p. 13.
[27] R. Doc. 13.
[28] *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

pervasive to alter the conditions of the victim's employment and create an abusive working environment."[29]

Here, Defendants point out, of the seven instances of inappropriate behavior by coworkers cited by Plaintiff, he links only two to race: that white employees who were absent or tardy due to a tree blocking the road to the plant were not disciplined, whereas he was; and (2) Defendants "took affirmative steps to conceal the tardiness of white employees."[30] In Defendants' view, neither allegation includes facts plausibly linking the alleged objectionable action to Plaintiff's race, characterizing these two instances of unfair treatment based on attendance write-ups as neither severe nor abusive by a reasonable person. Although Defendants are correct that Plaintiff's claims of a hostile work environment border on threadbare, the Court looks at the Complaint as a whole, and notes that Plaintiff contends all of the incidents he cites were based on his race. Accordingly, he sufficiently alleges facts that could support a claim that the race-based harassment was so severe or pervasive as to create an abusive working environment.

To make out a prima facie case of discrimination under Title VII, the plaintiff must plead facts showing he: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly-situated employees outside the protected group."[31] Defendants assert that Plaintiff's claim fails because he does not sufficiently plead that he was the victim of an adverse employment action.

---

[29] *White v. Government Employees Ins.*, 457 Fed. App'x 374, 379-80 (5th Cir. 2012).
[30] R. Doc. 8-1, p. 19.
[31] *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

7

Defendants argue that, under 5th Circuit jurisprudence, "an employment action that does not affect job duties, compensation, or benefits is not an adverse employment action."[32]

Here, Plaintiff ostensibly asserts that he suffered an adverse employment action by his employer by alleging that he was "constructively discharged" from his employment. To establish constructive discharge, an employee must show that his "working conditions were so intolerable that a reasonable employee would feel compelled to resign."[33] Constructive discharge requires that a plaintiff demonstrate "a greater degree of harassment" than is necessary to establish a hostile work environment claim.[34] To determine the reasonableness of an employee's decision to resign, courts consider the following: "(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement on terms that would make the employee worse off whether the offer was accepted or not."[35]

Plaintiff in this case alleges at most that he was subject to "badgering, harassment, or humiliation" intended to result in his resignation. Defendants argue that only two of the instances of harassment alleged in Plaintiff's complaint make any reference to race. They further argue that even if the other incidents were sufficiently pled to allege unlawful race discrimination, the incidents were (a) too distant in time from the decision to resign, (b) isolated, and (c) sporadic

---

[32] R. Doc. 8-1, p. 20 (citing
[33] *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 319 (5th Cir. 1997).
[34] *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001).
[35] *Barrow v. New Orleans, S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994).

from which to conclude that Defendants were encouraging Plaintiff to resign. Plaintiff has no response. This Court finds that Plaintiff's claims of constructive discharge and race-based discrimination are rudimentary; however, the Court finds that, when viewing the complaint as a whole, the allegations are sufficient to survive a motion to dismiss for failure to state a claim.[36]

Lastly, Plaintiff asserts he was constructively discharged in retaliation for reporting Defendants' allegedly discriminatory practices. "To establish a *prima facie* case of retaliation, a plaintiff must show that (1) she participated in a Title VII protected activity, (2) she suffered an adverse employment action by her employer, and (3) there is a causal connection between the protected activity and the adverse action."[37] To constitute prohibited retaliation, an employment action must be "materially adverse," one that would "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination."[38] The purpose of this objective standard is "to separate significant from trivial harms" and "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing."[39] Even when an adverse action is intended by the employer as retaliation, it must still satisfy this materiality standard.[40]

Defendants assert that Plaintiff has failed to allege any acts of harassment or misconduct

---

[36] Notably, the cases relied on by Defendants were decided after trial on the merits, rather than in a motion to dismiss for failure to state a claim. *See, e.g., Hill v. K-Mart Corp.*, 699 F.2d 776, 779 (5th Cir. 1983).
[37] *Stewart v. Mississippi Transp. Com'n*, 586 F.3d 321, 331 (5th Cir. 2009) (citing *Aryain v. Wal–Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir.2008)).
[38] *Stewart, supra*, at 331 (citing *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006)).
[39] *Id.*
[40] *Id.*

that occurred following August 16, 2018, when he allegedly reported the harassment to his employer.[41] This Court agrees that Plaintiff has failed to plead any facts supporting a claim of retaliation. Plaintiff merely alleges that "[n]o action was taken by Defendants to stop the harassment, rather, Plaintiff was constructively discharged from his employment on October 11, 2018."[42] In his Charge of Discrimination submitted to the EEOC, Plaintiff notes that, after he reported the harassment, "I received one response from Mr. Rimmer, where he brushed me off."[43] Accordingly, Plaintiff has failed to assert sufficient facts on which relief for a claim of retaliation could be granted.

For the reasons set forth above,

**IT IS ORDERED** that the Motion to Dismiss[44] is GRANTED IN PART and DENIED IN PART. Plaintiff's claim of retaliation under Title VII is hereby DISMISSED WITHOUT PREJUDICE. Plaintiff is permitted fourteen (14) days in which to amend his complaint, or the claim of retaliation under Title VII will be dismissed with prejudice.

New Orleans, Louisiana, this 30th day of September 2020.

*[signature]*
GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE

---

[41] R. Doc. 8-1, p. 23.
[42] R. Doc. 1, p. 5.
[43] R. Doc. 13-2, Exhibit B, p. 1.
[44] R. Doc. 8.